IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STEPHANIE DIXON, | CV. NO. 16-00110 DKW-KJM |
| Plaintiff, | **ORDER GRANTING DEFENDANT STATE OF HAWAII, DEPARTMENT OF EDUCATION'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND** |
| vs. | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Stephanie Dixon brings discrimination, hostile work environment, and retaliation claims against her current employer, the State of Hawaii, Department of Education ("DOE"), asserting that she was treated less favorably than a similarly situated white male employee when she was denied training opportunities, forced to share an office with another African American school counselor, and eventually moved to a smaller office. Dixon alleges that the DOE took no action when she complained about the disparate treatment, but instead retaliated against her when she reported an assault by a parent of one of her students. The DOE seeks judgment on the pleadings as to each of her claims under federal and state law.

To the extent Dixon's claims for disparate treatment and retaliation are based upon discrete acts occurring more than 300 days before she filed her Charge of Discrimination, those claims are dismissed with prejudice as untimely. Further, because Dixon fails to adequately state claims upon which relief may be granted, her timely discrimination and retaliation claims (based upon the 2012 incident involving the assault by a student's parent) and her hostile work environment claims are dismissed as well. Dixon is permitted limited leave to file an amended complaint consistent with the terms of this Order.

## BACKGROUND

Dixon has been employed by the DOE from 1999 to the present, and in July 2006, she was assigned to Iroquois Point Elementary School ("IPES") to work as a school counselor. First Am. Compl. ("FAC") ¶¶ 5–6, Dkt. No. 8. The only African American female counselor, Dixon alleges that beginning in 2008, the DOE subjected her to "disparate and differential treatment as compared to similarly situated, non-African American employees." FAC ¶¶ 10–12.

In January 2008, Principal Heidi Armstrong, a Caucasian female, forced Dixon and the only African American School Based Behavioral Health Specialist ("SBBH") to share an office, despite the fact that the SBBH worked with students with substantial emotional needs. FAC ¶¶ 7, 12. Although Dixon expressed her concerns to Armstrong about this shared-office arrangement, Armstrong required

the two African American females to share the same office until the SBBH left IPES in approximately June 2009. FAC ¶ 13.

Dixon also alleges that she was treated differently than, and denied opportunities afforded to, Nicholas Barry, a Caucasian male school counselor. From September 2009 to January 2012, Dixon was not allowed to attend training in connection with IPES' transition to becoming an International Baccalaureate school, even though Barry was allowed to do so. FAC ¶¶ 14–15. In addition to performing her own duties as a school counselor, Dixon alleges she was also expected to provide assistance to others at IPES, whereas Barry did not have the same additional expectations. FAC ¶ 16. In November 2009, Armstrong relocated Dixon's office from a portable classroom to a converted library storage closet, which was approximately one-fifth the size of Barry's office in the library conference room. FAC ¶¶ 17–18. Dixon also claims that she was required to find her own substitute when she was absent, but Barry was not required to do the same. FAC ¶¶ 19–20. According to Dixon, "[o]n many occasions [she] attempted to address her concerns about the disparate treatment to which she had been subject but no changes were made." FAC ¶ 21. Instead, her concerns were often met with hostility by Armstrong and Vice Principal, Robert Hurley, a Caucasian male. FAC ¶¶ 8, 21.

In August 2012, Dixon alleges she was verbally and physically assaulted by a parent of a student to whom she had been assigned. FAC ¶ 22. Dixon reported the assault to Principal Ofelia Reed, a Filipino American female who replaced Armstrong in August 2012, but Dixon claims no action was taken following her report. FAC ¶¶ 9, 23. Dixon requested that Barry be assigned to work with this student, but Principal Reed refused the reassignment request, and instead, "expected Plaintiff to continue working with the student and the parent who assaulted Plaintiff." FAC ¶ 24–25. According to Dixon, Reed told her on October 10, 2012 that Barry would not be reassigned because Barry "does not do well with change." FAC ¶ 26.

Dixon went on leave beginning October 12, 2012, "due to the harassment and discrimination to which Defendant had subjected her," FAC ¶27, and filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). FAC ¶ 28.

On March 11, 2016, Dixon filed the current action against the DOE pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* On June 7, 2016, Plaintiff filed the FAC asserting two Counts for "Illegal Employment Discrimination" and "Retaliation" in violation of both Title VII and Hawaii Revised Statutes ("HRS") Chapters 368 and 378. Count I alleges discrimination based on Dixon's race, color and sex, alleging that the DOE "treated Plaintiff differently as compared to similarly situated

employees who were not of the same race, color, or sex," FAC ¶ 31, and that the

conduct of "Defendant's supervisory and administrative employees against Plaintiff

created a hostile and offensive working environment." FAC ¶ 32. Count II asserts

that the DOE retaliated against Dixon for bringing complaints of "harassment and

discrimination which were violations of State and Federal law," FAC ¶ 38, and that

such "retaliation by Defendant reflects a pattern and practice of illegal behavior."

FAC ¶ 39.

The DOE moves for judgment on the pleadings and requests the dismissal of

each of Dixon's claims with prejudice.

## STANDARD OF REVIEW

The standard governing a Rule 12(c) motion for judgment on the pleadings is

functionally identical to that governing a Rule 12(b)(6) motion. *United States ex*

*rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true,

while the allegations of the moving party that have been denied are assumed to be

false. *See Hal Roach Studios v. Richard Feiner & Co*., 896 F.2d 1542, 1550 (9th

Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual

allegations in a complaint in the light most favorable to the nonmoving party.

*Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under Rule 12(c),

"[j]udgment on the pleadings is properly granted when, accepting all factual

allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).   As detailed below, the DOE has met this standard.

## DISCUSSION

First, Dixon's state law claims are dismissed in light of the Defendant State agency's sovereign immunity.   Second, insofar as her disparate treatment and retaliation claims are based upon discrete acts occurring more than 300 days before she filed her Charge with the EEOC, such claims are untimely and are dismissed. Finally, although the DOE does not challenge the timeliness of her remaining causes of action, because Dixon fails to adequately state claims for hostile work environment, or for discrimination and retaliation based upon the 2012 incident involving the assault by a student's parent, those claims are likewise dismissed. Because the DOE is entitled to judgment on the pleadings, the Court grants its Motion but permits Dixon limited leave to amend her timely claims, with instructions below.

## I.      The State Law Claims Are Barred By The Eleventh Amendment

The DOE seeks dismissal of Dixon's claims under HRS Chapters 368 and 378 based upon its sovereign immunity.   The Eleventh Amendment prohibits suits

against state agencies "regardless of the nature of the relief sought."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   Eleventh Amendment immunity applies to claims brought against a state in federal court unless the state consents or Congress unequivocally abrogates the immunity under its Fourteenth Amendment authority.   *Id*. at 99.   The State of Hawaii has not consented to suit in federal court for Chapter 368 or 378 claims, and thus sovereign immunity bars Dixon's § 378–2 claims against the DOE.   *See Lawrence v. Haw. Air Nat'l Guard*, 126 Fed. Appx. 835, 837 (9th Cir. 2005); *Turner v. Dep't of Educ. Hawaii*, 855 F. Supp. 2d 1155, 1177 (D. Haw. 2012), *aff'd*, 539 F. App'x 731 (9th Cir. 2013) (dismissing Chapter 378 claims against the DOE and Superintendent in her official capacity); *Sherez v. State of Haw. Dep't of Educ.*, 396 F. Supp. 2d 1138, 1143 (D. Haw. 2005) (granting Rule 12(c) motion for judgment on the pleadings, because "the DOE, as an agency of the state, shares in the state's Eleventh Amendment immunity"); *Office of Hawaiian Affairs v. Dep't of Educ.*, 951 F. Supp. 1484, 1492 (D. Haw. 1996) (holding that the DOE is a state agency entitled to Eleventh Amendment immunity).

Accordingly, the Court grants the DOE's Motion with respect to Dixon's claims based on state law.

## II.     The Untimely Claims Are Dismissed With Prejudice

The DOE seeks dismissal of Dixon's claims that it characterizes as based on discrete acts of discrimination and retaliation occurring prior to March 19, 2012—*i.e.*, those beyond 300 days of Dixon's January 13, 2013 EEOC Charge of Discrimination.   The DOE accepts, for purposes of this Motion, that Dixon's claims relating to the failure of the DOE to sufficiently address Dixon's assault by a parent and request for reassignment, which occurred between August and October 2012, and Dixon's hostile work environment claim are both timely.[1]   *See* FAC ¶¶ 22–26; Reply at 4, Dkt. No. 45.

### A.     Legal Principles Regarding Timeliness

Title VII requires that a "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."   42 U.S.C. § 2000e–5(e)(1); *see also EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in this case because Title VII extends the 180-day period to 300 days if

---

[1]To be clear, in spite of Dixon's arguments to the contrary, the DOE does not challenge as untimely Dixon's Count I hostile work environment claim.   *See* Mem. in Supp. at 7, Dkt. No. 35-1.   Generally, for hostile work environment claims of a continuing nature, the aggrieved employee must allege that "at least one discrete act had occurred within the 300-day time frame." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2004) (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002)).

filed in a 'worksharing' jurisdiction. . . . Hawaii and California are both

'worksharing' states . . . ") (citations omitted).

In determining whether a claim is timely, courts look to whether it is based on

a discrete act of discrimination or retaliation. A discrete act consists of an unlawful

practice that "occurred" on the day it "happened," which includes, for example,

"termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 114 (2002). *Morgan* explains that

a plaintiff may assert a claim for a discrete act only if the plaintiff timely filed an

EEOC charge for that particular act:

> [D]iscrete discriminatory acts are not actionable if time barred,
> even when they are related to acts alleged in timely filed charges.
> Each discrete discriminatory act starts a new clock for filing
> charges alleging that act. The charge, therefore, must be filed
> within the [relevant statutory] time period after the discrete
> discriminatory act occurred. The existence of past acts and the
> employee's prior knowledge of their occurrence, however, does
> not bar employees from filing charges about related discrete acts
> so long as the acts are independently discriminatory and charges
> addressing those acts are themselves timely filed. Nor does the
> statute bar an employee from using the prior acts as background
> evidence in support of a timely claim.

*Id*. at 113.

By contrast, a hostile work environment claim is "different in kind" because it

is "based on the cumulative effect of individual acts," "occur[ring] over a series of

days or perhaps years and, in direct contrast to discrete acts, a single act of

harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Because hostile work environment claims develop over time, and are not based on acts that happen on a particular day as with claims based on discrete acts, the events making up hostile work environment claims are not limited to those within the limitations filing period. *Id.* at 113–14.

With this backdrop, the Court turns to the application of the 300-day limitations period to the allegations in Dixon's FAC.

### B. Claims Based Upon Discrete Acts Occurring Before March 19, 2012 Are Time-Barred

The FAC alleges that in January 2008, Armstrong forced Dixon and another African American female to share the same office until approximately June 2009. FAC ¶¶ 7, 12–13. In November 2009, Armstrong relocated Dixon's office from a portable classroom to a converted library storage closet. FAC ¶¶ 17–18. Dixon contends that from September 2009 to January 2012, she was not allowed to attend training in connection with IPES' transition to becoming an International Baccalaureate school—but does not specify how many times she requested and was denied training opportunities that Barry, the white male counselor, was permitted to attend. FAC ¶¶ 14–15. Dixon also claims that she was required to arrange for a substitute when she was absent, whereas Barry was not, although she does not allege any specific dates or the frequency of such occurrences. FAC ¶¶ 19–20.

According to Dixon, "[o]n many occasions [she] attempted to address her concerns about the disparate treatment to which she had been subject but no changes were made."  Again, no dates are provided in the FAC.  FAC ¶ 21.

The parties dispute when these particular claims accrued for purposes of the limitations period.  Dixon argues that all of these claims are timely because none of them are "comprise[d] of mere discreet [sic] acts; rather, they involve policy decisions as applied only to Plaintiff," and therefore, "were part of a series of separate acts that collectively constituted one 'unlawful employment action.'" Mem. in Opp'n at 8–9 (quoting *Morgan*, 536 U.S. at 117).  The DOE disagrees with this characterization of the nature of the conduct underlying Dixon's disparate treatment and retaliation claims—in contrast to Dixon's hostile work environment cause of action, which they do not challenge as untimely.

The Court begins with *Morgan*'s teaching that causes of action that can be brought individually expire with the applicable limitations period.  By contrast, the hostile work environment theory is designed explicitly to address situations in which the claim is based on the cumulative effect of multiple acts, rather than on any particular action taken by the defendant.  In such cases, the filing clock does not begin running with the first act because at that point the plaintiff has no claim; nor can a claim expire until the full course of conduct is complete.  *See O'Connor v. City of Newark*, 440 F.3d 125, 128–29 (3d Cir. 2006) (citing *Morgan*, 536 U.S. at

117–18).   The DOE argues, and the Court agrees, that any claims relating to Dixon's office space assignments, denials of training, and substitute teacher requirements, are based on discrete acts.   Insofar as these acts occurred outside of the 300-day filing window, they are untimely.

In opposition, Dixon apparently argues that the untimely events described above are all part of her hostile work environment claims, and that the untimely events are therefore properly part of her claims because at least one act constituting her hostile work environment claims occurred within 300 days of filing her Charge with EEOC.   *See* Mem. in Opp'n at 8–9.   But Dixon's characterization ignores *Morgan*'s teaching that discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."   536 U.S. at 113.   Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," *id*., meaning that a plaintiff must file charges relating to each discrete discriminatory act within the limitations period provided.[2]   Although Dixon argues

---

[2]On this point, *Porter v. California Department of Corrections*, 419 F.3d 885 (9th Cir. 2005), is instructive.   In determining the timeliness of plaintiff's hostile work environment claim containing allegations of both discrete acts and non-discrete acts, *Porter* sorted the plaintiff's allegations between discrete acts and non-discrete acts, and then considered only the non-discrete acts in determining whether the claim was timely.   *Id*. at 893–94.   *Porter* reasoned as follows—

> [W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment.   If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts.

that the claims against the DOE constitute a pattern or practice and were "policy decisions," these alleged violations are not a series of acts that together amount to a single pattern or practice.[3]

---

*Id.* at 893.   Thus, under *Porter*, allegations of discrete acts are separate from the allegations of non-discrete acts making up a hostile work environment claim, and merely asserting otherwise untimely discrete acts as part of a hostile work environment claim does not make them timely. *See also Rekow v. Sebelius*, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011) (collecting cases standing for the proposition that "[b]ecause the Supreme Court has explicitly differentiated between discrete employment acts and a hostile work environment, many courts have concluded that a discrete act cannot be part of a hostile work environment claim and instead constitutes a separate unlawful employment practice" (quotations omitted)); *Montoya v. Regents of Univ. of Cal.*, 2010 WL 2731767, at *7 (S.D. Cal. July 9, 2010) (describing that under *Porter* "the only way to state a hostile environment claim under current Ninth Circuit law is to allege a timely non-discrete act").

[3]The Court does not construe Plaintiff's allegations as asserting a true "pattern and practice claim" under Title VII.   For one, as discussed herein, Dixon's FAC plainly describes each incident as a separate discrete act of discrimination or retaliation.   Second, she has not alleged that any other employees were discriminated or retaliated against, and has not provided any anecdotal or statistical evidence indicating a pattern or practice of discrimination based on race and/or sex. *See Obrey v. Johnson*, 400 F.3d 691, 694, 698 (9th Cir. 2005); *Wood v. Univ. Physicians Healthcare,* 2014 WL 3721207, at *6 (D. Ariz. July 28, 2014), *aff'd,* 657 F. App'x 643 (9th Cir. 2016) ("While Plaintiff uses 'pattern of discrimination' as a conclusory label, 'discrete discriminatory acts will not create a pattern of discrimination without more; pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on 'discriminatory conduct that is widespread.'") (quoting *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 (9th Cir. 2009)).   Finally, the Court observes that most pattern or practice claims are brought either by the EEOC or, if private, as class actions—indeed, certain other circuits have explicitly rejected pattern or practice claims brought by individual private litigants.   *See, e.g.*, *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) ("We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs."); *see also Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 632 (10th Cir. 2012) (citing cases); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 967 n.24 (11th Cir. 2008); *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 355–56 (5th Cir. 2001); *Lowery v. Circuit City Stores, Inc*., 158 F.3d 742, 760–62 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *Babrocky v. Jewel Food Co*., 773 F.2d 857, 866–67 n.6 (7th Cir. 1985).   As such, the Court will not construe Plaintiff's reference to "pattern and practice" as evincing an actual claim under that scheme.   Instead, the Court reads Dixon's assertions as either merely reinforcing her attempt to characterize her claims as timely hostile work environment claims or simply erroneous.

Specifically, Dixon's allegations that she was assigned to share an office, beginning in January 2008, and then moved out of this office into a converted closet in November 2009—are discrete acts—these events are actionable in and of themselves at the time of the occurrence. She argues, erroneously, that her shared-office space was "an indefinite assignment with which Plaintiff had to deal every single day and which interfered with her ability to do her job as a School Counselor working in the same space as the SBBH who dealt with severely disturbed children." Mem. in Opp'n at 8. Likewise, she claims that her converted office space "assignment was not for one day or one week; it was a permanent assignment[.]" Mem. in Opp'n at 8-9. Dixon's argument misses the mark. Although she may have continued to feel the impact or the effects of the office assignment each day of her employment, a discrimination claim does not accrue when the plaintiff feels the full effects of the discrimination, but when the discrete act occurs. *See Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016) (confirming, in the employment law context, "the standard rule that a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim"); *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (Although "the *effect* of the employer's rejection [of an employee's proposed accommodation] continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as

examples of a discrete act.") (citation and quotation omitted).    The DOE's decisions to assign Dixon to the designated office spaces were each discrete acts giving rise to a separate cause of action.[4]

Similarly, Dixon's claims that she was denied training opportunities afforded to Barry in 2009 and 2012 are discrete acts, each separately actionable, despite the fact that she may have felt the continued effects of the denials indefinitely.    Once again, a discrimination claim does not accrue each time a plaintiff feels the effects of the discrimination, but when the underlying discriminatory act occurs.    *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 634 (10th Cir. 2012) (noting that a claim accrues upon the occurrence of the act and rejecting similar denial-of-training claim as untimely); *Lewis v. City of Chicago*, 560 U.S. 205 (2010) (affirming the general rule that the present effects of past actions cannot lead to Title VII liability for claims

---

[4]*See, e.g., Vives v. Children's Hosp., Inc.*, 2013 WL 5607215, at *3 (E.D. La. Oct. 14, 2013) (granting summary judgment to employer where employee "received the space in 2006 and knew of [co-worker's] apparently larger space at that time," but she "filled out her EEOC intake questionnaire and charge on November 30, 2009, meaning that only claims relating [to] discrete acts which occurred on or after February 3, 2009, are timely brought," and plaintiff's "claim of discriminatory office space assignment is therefore time barred"); *Block v. Solis*, 2010 WL 2079688, at *11 (W.D. Wash. May 20, 2010) *aff'd*, 436 Fed. Appx. 777 (9th Cir. 2011) ("Ms. Block's transfer to the fifth floor and the DOL's denial of her request for accommodation constitute discrete acts that must be separately exhausted."); *Bernstein v. City of Atlantic City*, 2011 WL 2559369, at *5 (D.N.J. June 27, 2011) (finding that "removal of [plaintiff's] privileges regarding the city vehicle and removal from her office to a cubicle[] are discrete acts"); *Sgro v. Bloomberg L.P.*, 2008 WL 918491, at *5–*6 (D.N.J. Mar. 31, 2008), *aff'd in part, rev'd in part*, 331 Fed. Appx. 932 (3rd Cir. 2009) (noting that an office move to an undesirable location is a discrete act and not subject to the continuing violation doctrine); *Fol v. City of New York*, 2003 WL 21556938, at *4 (S.D.N.Y. Jul. 9, 2003) (determining that rejection of an employee's request for a more ergonomic work station is a discrete act).

requiring discriminatory *intent*, including disparate treatment claims). Indeed, one

of the claims *Morgan* labeled a discrete act was just such a denial-of-training claim.

*See* 536 U.S. at 114–15; *see also Lyons v. England*, 307 F.3d 1092, 1107 n.8 (9th

Cir. 2002) (listing an employer's failure-to-train as a discrete act); *Phan v.*

*Employment Dev. Dep't*, 2017 WL 3116826, at *4 (E.D. Cal. July 21, 2017)

(dismissing as untimely claim that defendant's failure to train and certify was an

ongoing violation, where plaintiff was the only employee who lacked foreign

language certification, which meant she received less pay, holding that plaintiff

"cannot merely repackage a discrete act as ongoing to circumvent the Supreme

Court's teaching in *Morgan*"). Thus, it is irrelevant that Dixon did not experience

the full effects of her denials of International Baccalaureate implementation training

until sometime later or even that she continues to feel the effects to the present.

Dixon was required to file an EEOC Charge within 300 days of each denial of

training.

The same is true with respect to the unspecified dates on which Dixon was

absent and required to obtain a substitute teacher. Each of these events "constitutes

a separate actionable unlawful employment practice" such that Dixon was required

to assert them in a timely EEOC Charge. *See Morgan*, 536 U.S. at 114.

In short, Dixon's disparate treatment and retaliation claims are based upon

discrete acts. Any claims based on acts that accrued before March 19, 2012—300

days prior to the filing of Dixon's Charge on January 13, 2013—are time-barred. Because amendment with respect to the time-barred discrete acts would be futile, dismissal of these claims is with prejudice. Defendant's Motion is therefore granted to the extent it seeks dismissal of the untimely claims for discrimination and retaliation based on discrete acts occurring outside of the 300-day window.

## III. The FAC Fails To State A Plausible Disparate Treatment Claim

With respect to Dixon's timely discrimination claims, the DOE argues they still fall short as a matter of law. For instance, because Dixon neither suffered an adverse employment action nor alleged that any similarly situated employee outside of her protected class was treated more favorably, the DOE asserts that her disparate treatment claim fails. The Court agrees.

Pursuant to Rule 12(c), the Court construes the FAC's factual allegations—as to Dixon's timely claims relating to the August 2012 assault by a parent and Reed's October 12, 2012 response to Dixon's complaint—in the light most favorable to Dixon. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Dixon asserts that, in August 2012, she was verbally and physically assaulted by a parent of a student, and she later filed a police report regarding the incident. FAC ¶ 22. However, when she reported the assault to Principal Reed, no action was taken. FAC ¶ 23. On "more than one occasion," Dixon requested that Barry "be assigned to work with the student whose parent assaulted" her, FAC ¶ 24, but "Reed refused to reassign the

student and expected [Dixon] to continue working with the student and the parent." FAC ¶ 25. On October 10, 2012, Reed told Dixon that Barry "would not be assigned to work with the student and parent who assaulted [her] because [he] 'does not do well with change.'" FAC ¶ 26.

Because she offers no direct evidence of discrimination, the Court focuses its inquiry on the elements of a prima facie case of discrimination, namely: (1) that Dixon belongs to a class of protected persons; (2) that she was qualified for her position and performed her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that the DOE treated her differently than a similarly situated employee who does not belong to the same protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (*McDonnell Douglas* framework applies

to Title VII claims).[5]   As the DOE points to the third and fourth elements as missing

from Dixon's disparate treatment claim, the Court addresses each in turn.[6]

An adverse employment action in the context of a Title VII disparate

treatment claim "is one that materially affects the compensation, terms, conditions,

or privileges of . . . employment." *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089

(9th Cir. 2008) (internal quotation marks and brackets omitted).   Dixon's

allegations that Reed (1) took no action when Dixon reported the August 2012

assault by a parent; and (2) would not reassign another counselor to work with the

student whose parent assaulted Dixon, FAC ¶¶ 22–26, do not provide a sufficient

basis for this Court to infer that Dixon was subject to an adverse employment action.

No allegations in the FAC suggest that the DOE's actions caused "a material

employment disadvantage, such as a tangible change in duties, working conditions

or pay." *Delacruz v. Tripler Army Med.,* 507 F. Supp. 2d 1117, 1123 (D. Haw.

2007).   That is, Dixon offers no factual details supporting a significant change in

---

[5]The Court may look to these elements to determine whether Plaintiff has asserted a plausible claim for relief as required by *Iqbal* and *Twombly,* even though *"*a plaintiff need not plead facts constitut[ing] all elements of a prima facie employment discrimination case in order to survive a motion to dismiss." *Fresquez v. Cty. of Stanislaus*, 2014 WL 1922560, at *2 (E.D. Cal. May 14, 2014); *see also Klingman v. Cty. of Maui*, 2016 WL 6996986, at *4 (D. Haw. Nov. 29, 2016) (noting that, on a Rule 12(b)(6) motion to dismiss, a plaintiff need not establish a prima facie Title VII claim, but adhering to the required elements of a claim in order to evaluate plausibility under *Iqbal* and *Twombly).*
[6]Nor does Dixon allege that she was qualified for her position and performed her job satisfactorily, the second element of a prima facie case.   While, as noted above, Dixon is not strictly bound by the elements of a prima facie case, her failure to allege this element is only one of several identified deficiencies.

employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In fact, it is not clear that Dixon alleges an employment action at all. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (holding that plaintiffs failed to satisfy third prong of prima facie case because "the fact that the appellants do not receive the same or substantially similar benefits . . . cannot be considered an 'adverse employment action' because the provision of these benefits by the [employer] is not an 'employment action' at all"). "A tangible employment action in most cases inflicts direct economic harm." *Id*. at 762; *see also Kortan v. Cal. Youth Auth*., 217 F.3d 1104, 1113 (9th Cir. 2000) (no adverse employment action where the plaintiff "was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit."). Here, no such economic harm is alleged to have occurred as a result of the two aforementioned acts. The allegations fail to rise to the level of tangible harm attributable to the DOE.

As to the fourth element, although Dixon alleges that she was treated less favorably than her white, male counterpart, the FAC fails to provide facts that the two were actually similarly situated. Employees "are similarly situated when they

have similar jobs *and* display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (emphasis added). Here, the FAC is devoid of any *facts* that Dixon and Barry were similarly situated—that they performed materially similar roles, displayed similar conduct or were involved in comparable incidents. *See Moran*, 447 F.3d at 755 ("the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects"); *cf. Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1163 (C.D. Cal. 2013) ("Courts 'require that the quantity and quality of the comparator's [conduct or] misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'") (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Dixon offers no facts that similarly situated employees outside her protected class were treated more favorably. For example, there are no allegations of similarly situated employees reporting any assaults by a parent, where Reed or other DOE decisionmakers either (1) took no action, or (2) rejected a request to limit contact between the employee and the parent (or related student). Nor does Dixon assert that the DOE accommodated any reassignment request from Barry, regardless of the basis. As a result, Dixon fails to sufficiently allege that she and Barry are similarly situated *in all material respects*. The bare legal assertions in the FAC are inadequate. *See, e.g.*, *Mahoe v. Operating Engineers Local Union No. 3 of the Int'l*

*Union of Operating* Engineers, AFL-CIO, 2013 WL 5447261, at *5 (D. Haw. Sept. 27, 2013) (dismissing disparate treatment claim where the complaint "lack[ed] sufficient information to show that the position of Recording Correspondent Secretary," the position of an employee who did not suffer the adverse employment decision suffered by plaintiff, "was similar to [plaintiff's] position of Treasurer").

Under these circumstances, the Court finds that Plaintiff has failed to "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 534 U.S. at 570. Even "accepting all factual allegations as true, there is no material fact in dispute, and the [DOE] is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925). Because amendment of Dixon's disparate treatment claim may be possible, the Court dismisses the claim without prejudice and with leave to amend.

## IV.   The FAC Fails To State A Hostile Work Environment Claim

In addition to alleging that the DOE "treated Plaintiff differently as compared to similarly situated employees who are not of the same race, color, or sex," FAC ¶ 31, Count I also alleges that the "acts of Defendant's supervisory and administrative employees against Plaintiff created a hostile and offensive working environment." FAC ¶ 32. Dixon further alleges in Count II that "retaliation by Defendant against her reflects a pattern and practice of illegal behavior." FAC ¶ 39. Because the facts alleged do not support a hostile work environment claim as a

matter of law, based on either discrimination or retaliation,[7] the DOE's Motion is granted with respect to this cause of action.

A hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)). "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he [or she] was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642.

In considering whether the discriminatory conduct was "severe or pervasive" for purposes of Title VII, the Court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting *Faragher v. City of Boca*

_____

[7]A hostile work environment is cognizable under the anti-retaliation provisions of Title VII. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).

*Raton*, 524 U.S. 775, 787–88 (1998)). The Supreme Court has cautioned that "Title VII [is] not . . . a general civility code," and therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citations and quotations omitted).

Assuming the truth of the allegations in the FAC, and looking at all the circumstances—including the infrequency of the allegedly discriminatory conduct in 2008, 2009, and 2012; the lack of severity; the absence of physically threatening or humiliating conduct on the part of DOE officials; and the lack of any facts demonstrating that the DOE's actions *unreasonably* interfered with an Dixon's work performance, *see Kortan*, 217 F.3d at 1110—it is clear that the alleged conduct was neither severe nor pervasive.

Dixon complains that from January 2008 until June 2009, she was forced to share an office, despite the fact that the SBBH worked with students with substantial emotional needs. FAC ¶¶ 7, 12–13. In November 2009, Armstrong relocated Dixon's office from a portable classroom to a converted library storage closet, which was approximately one-fifth the size of Barry's office, also located in the library. FAC ¶¶ 17–18. Dixon does not explain how these office assignments amount to conduct that was *objectively* severe or pervasive, or even how such assignments created an abusive working environment.

Dixon also alleges that she was treated differently and denied training opportunities afforded to the Caucasian male school counselor and—without providing specific dates or incidents—she claims that from September 2009 to January 2012, she was not allowed to attend training in connection with IPES' transition to becoming an International Baccalaureate school.  FAC ¶ 14.  She does allege that Barry attended such training "in 2009 and 2012"—in other words, apparently on two occasions three years apart.  FAC ¶ 15.  In addition to performing her own duties as a school counselor, Dixon obtusely alleges that she was also expected to "provide assistance" to others at IPES, whereas Barry was not, FAC ¶ 16, and that she was required to have a substitute when she was absent, whereas Barry was not.  FAC ¶¶ 19–20.  Again, however, Dixon does not allege the frequency of this conduct or detail how it altered the conditions of her employment so as to create an abusive working environment.

According to Dixon, "[o]n many occasions [she] attempted to address her concerns about the disparate treatment to which she had been subject but no changes were made."  FAC ¶ 21.  Instead, her concerns were often met with hostility by Armstrong and Vice Principal Hurley.  FAC ¶¶ 8, 21.  She does not detail the frequency or severity of any of the allegedly hostile interactions she endured with Armstrong or Hurley.

When, in August 2012, Dixon was verbally and physically assaulted by a parent of a student to whom she had been assigned, Dixon reported the assault to Reed, but no action was taken.   FAC ¶¶ 9, 22–23.   At some undisclosed date, Dixon requested that Barry be assigned to work with this student, but Reed refused to reassign the student, and instead, "expected Plaintiff to continue working with the student and the parent who assaulted Plaintiff."   FAC ¶ 24–25.   Although the assault described by Dixon at the hands of a parent might well have been a traumatic and unwelcome event, the DOE's alleged response to her report and request to reassign the student, without more, does not amount to the type of "severe and pervasive" conduct required to plausibly allege a hostile work environment claim based on race or sex.[8]   *See Brooks v. City of San Mateo*, 229 F.3d 917, 924 n.4 (9th Cir. 2000) ("A case involving a *single incident* of sexual harassment is obviously

_____

[8]*Compare Vasquez*, 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile work environment where employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others), and *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990) (determining no hostile work environment where employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, and kept illegal personnel files on Latino employees), with *Nichols v. Azteca Rest. Enters., Inc*., 256 F.3d 864, 870 (9th Cir. 2001) (finding hostile work environment where male employee of restaurant was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times a day), and *Draper v. Coeur Rochester, Inc*., 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, calling her "gorgeous" and "beautiful" rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her "ass," and asking over a loudspeaker if she needed help changing clothes).

distinct from one involving a *series of incidents*, which the employer knows about and does nothing to correct. In such circumstances, the non-action by the employer can fairly be characterized as acquiescence, *i.e*., having changed the terms and conditions of employment to include putting up with harassment from other employees.") (emphasis added) (citation omitted); *Ellison v. Brady*, 924 F.2d 872, 877(9th Cir. 1991) ("In determining whether there was a hostile work environment, it is the conduct of the harasser that must be severe and pervasive.").

Although Dixon alleges that her complaints to administrators Armstrong and Hurley were "met with hostility," such generalized averments are insufficient under the circumstances here. *See George v. Leavitt*, 407 F.3d 405, 408, 416 (D.C. Cir. 2005) (claim that coworkers "shouted" at plaintiff on multiple occasions and told her to "shut up" insufficient to state a claim); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54 (D.D.C. 2004) (claim that supervisor told plaintiff "to shut up and sit down" and "scream[ed]" at her insufficient to state a claim).

Viewing the totality of the circumstances alleged, Dixon has not demonstrated the severity, pervasiveness or abuse required to sustain a hostile work environment claim. Numerous missing details, and omitted context, materially hamper Dixon's ability to plausibly demonstrate such conditions. Moreover, Dixon appears to "misunderstand[] the nature of a hostile work environment claim." *Grosdidier v. Chairman, Broadcasting Bd. of Governors*, 774 F. Supp. 2d 76, 110 (D.D.C. 2011).

As discussed above, simply "[c]obbling together a number of distinct, disparate acts will not create a hostile work environment, because '[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim." *Id*. (alterations in original) (quoting *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009)). This is particularly true where the plaintiff's allegations are based on "work-related actions by supervisors" acting within the scope of their official duties. *Id*. at 110–11. Indeed, adopting Plaintiff's apparent theory of hostile work environment pleading "would transform virtually every discrimination or retaliation case involving more than one challenged action into a hostile work environment case." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 94–95 (D.D.C. 2016).

Because the FAC does not allege conduct by the DOE that was sufficiently severe or pervasive to alter the conditions of Dixon's employment, she fails to state a Title VII hostile work environment claim based on either discrimination or retaliation, and the Court grants the DOE's Motion on this cause of action. Because amendment of Dixon's hostile work environment claim may be possible, the Court dismisses the claim without prejudice and with leave to amend.

## V.     The FAC Fails To State A Retaliation Claim

Count II alleges that the DOE "retaliated against Plaintiff for bringing complaints of harassment and discrimination which were violations of State and

Federal law." FAC ¶ 38. Setting aside the untimely discrete acts dismissed above, Plaintiff's retaliation claim is based on the events relating to the August 2012 assault by the parent, her subsequent report of the assault to Reed, and Reed's October 12, 2012 rejection of her request to reassign the student to another counselor. For the reasons that follow, Dixon fails to state a claim for retaliation under Title VII.

An employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation signals omitted)).

To maintain a retaliation claim, Dixon must assert (1) that she was engaged in a protected activity opposing an unlawful employment practice; (2) that she suffered an adverse employment action, and (3) that there was a causal link between her activity and the adverse employment action. *Freitag v. Ayers*, 468 F.3d 528,

541(9th Cir. 2006).   Plaintiff has failed to meet the requirement that she allege *facts*

supporting the first two elements.

First, Dixon must have engaged in activity protected by the statutes on which

she relies.   Dixon appears to assume that any report of wrongdoing—even

wrongdoing that falls outside of what Title VII prohibits—supports a retaliation

claim under Title VII.   She is mistaken.   Dixon does not allege that she complained

about discrimination or harassment on the basis of race, color, sex or any other

protected category to anybody prior to filing her EEOC Charge on January 13, 2013.

*See Nguyen v. McHugh*, 65 F. Supp. 3d 873, 901 (N.D. Cal. 2014) ("A retaliation

claim requires that Plaintiff engaged in protected activity and that she was

'subsequently' subjected to an adverse employment action.   Plaintiff has not

demonstrated that she engaged in protected activity prior to her EEOC complaint.")

(citations omitted).   Her alleged complaints to Reed from August 2012 through

October 12 related to her work duties—she reported an assault by a parent and Reed

took no action; she then requested the student be reassigned, but Reed denied her

request.   None of her complaints to Reed specifically related to her race, color, or

sex.   Although she alleges that Reed refused to reassign the student to Barry

because "he does not do well with change," Dixon does not allege that she

complained to Reed about any conduct on the part of anyone at the DOE that

implicated any protected category.   *See, e.g., Lalau v. City & Cty. of Honolulu*, 938

F. Supp. 2d 1000, 1018 (D. Haw. 2013) (noting that the first element of a retaliation claim may not be satisfied by a complaint regarding behavior unrelated to a protected category, and that, "even if [plaintiff's] demotion was retaliatory, the retaliation allegedly related to his intent to report misconduct unrelated to his national origin or his age").   Dixon, in other words, fails to set forth facts permitting the inference or conclusion that the DOE's alleged retaliation related to her reporting of or opposition to race, color, or sex discrimination.

Dixon likewise fails to allege an adverse employment action that is "reasonably likely to deter employees from engaging in protected activity." *Vasquez*, 349 F.3d at 646.   Dixon's choice to go "on leave due to the harassment and discrimination to which Defendant had subjected her" is not an adverse employment action in response to any protected activity, based upon the sparse facts alleged.   Nor is Reed's failure to take action following the August 2012 incident or her refusal to reassign the student whose parent assaulted Dixon.   *See, e.g.*, *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640–41 (10th Cir. 2012) (holding that employer's failure to investigate an internal complaint of discrimination was not an adverse employment action, where plaintiff argued that employer's "failure to investigate was intended to dissuade her from pursuing the complaint," but did not "explain how this failure made it more difficult for her to pursue her claims with the EEOC or otherwise assert her rights [and] she does not allege she suffered any other

harm from [her employer's] failure to investigate her internal complaint"); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721–22 (2d Cir. 2010) (finding that a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (failure to reassign or "reassignment of job duties is not automatically actionable," and "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances").[9]

Simply put, while Plaintiff may have formulaically recited the elements of a cause of action, the absence of any further specificity morphs her allegations into bare legal conclusions, and accordingly, she fails to state a plausible retaliation claim under Title VII. The Court therefore grants the Motion as to Dixon's retaliation cause of action. Because amendment of Dixon's retaliation claim may be possible, the Court dismisses Count II without prejudice and with leave to amend.

---

[9]The "adverse employment action" element is similarly deficient for the reasons detailed in Section III., *supra*. Moreover, even if Plaintiff could show that she suffered an adverse employment action, she has not plausibly demonstrated a causal link between any adverse employment action and any prior protected activity. As discussed above, she alleges no protected activity other than her EEOC Charge, which was not filed until January 2013. *See Richards v. City of Seattle*, 342 Fed. Appx. 289 (9th Cir. 2009) (affirming district court's grant of summary judgment and noting the plaintiff could not demonstrate a causal nexus where the adverse employment action took place *before* the protected activity).

## VI.   Dixon Is Granted Limited Leave To Amend

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires."   *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a).   The Ninth Circuit instructs "that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other *facts*."   *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (emphasis added) (citations and quotation marks omitted).   Leave to amend may be denied, however, "where the amendment would be futile."   *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

Because amendment of the *timely* claims dismissed by this Order may be possible, Dixon is granted leave to amend to address the deficiencies identified herein, by no later than January 5, 2018.   Should she choose to amend the dismissed causes of action, Dixon must allege additional facts as to each element required to state a claim.   The Court cautions Dixon to carefully consider whether she can plausibly allege facts stating a cognizable claim in any amended complaint she considers filing with this Court.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Judgment on the Pleadings is GRANTED.   Dkt. No. 35.   Dixon is granted leave to file an amended complaint to

attempt to cure the deficiencies noted in this Order, as to claims that are not time-barred, by **January 5, 2018**.

IT IS SO ORDERED.

DATED: December 5, 2017 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Dixon v. Dep't of Educ.*; Civil No. 16-00110 DKW-KJM; **ORDER GRANTING DEFENDANT STATE OF HAWAII, DEPARTMENT OF EDUCATION'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**